IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
AUGUSTA DIVISION

GOLF TRAVEL, LLC,               )
                                       )
    Plaintiff,              )
                                       )     Civil Action File
   vs.                  )     No.: 1:21-cv-00063-JRH-BKE
                                     )
JOSEPH MULLINS; MULLINS SPORTS )
AND ENTERTAINMENT, LLC; JOHN   )     **Jury Trial Demanded**
DOE 1-10; and ABC CORP 1-20;     )
                                     )
    Defendants.      )

## <u>FIRST AMENDED COMPLAINT</u>

COMES NOW Plaintiff in the above-styled action by and through its attorneys, and sets forth its First Amended Complaint as follows:

## <u>PARTIES</u>

1.

Plaintiff was a limited liability company organized and duly existing pursuant to the laws of the State of Ohio and whose principal place of business was Scottsdale, Arizona. The only member of Plaintiff resides in Arizona. Plaintiff was engaged in the interstate business of selling golf vacation packages.

2.

Joseph Mullins ("Mullins") is an individual who maintains a home in or near Augusta, Georgia but is registered to vote and legally resides at 311 North Pine Street, Bunnell, Flagler County, Florida 32110.

3.

Mullins entered into contracts and/or committed tortious acts within the state of Georgia as described herein and may be served by service of the Summons and a photocopy of the Complaint at 311 North Pine Street, Bunnell, Flagler County, Florida 32110 or where he may be found.

4.

Mullins Sports and Entertainment, LLC ("Mullins Sports"), is a limited liability company organized pursuant to the laws of the state of Georgia, whose registered agent for service of process is Joe Mullins, 300 Applecross Drive, Augusta, Columbia County, Georgia 30907, and which may be served by service of the Summons and a photocopy of the Complaint upon said registered agent at said address. Mullins is the sole member of Mullins Sports.

5.

John Doe 1-10 are individuals who are associated with Mullins, Mullins Sports, and/or ABC Corp 1-20, who participated in the tortious conduct as

described herein or received money wrongfully taken from Plaintiff by the tortious conduct of Mullins, Mullins Sports, and/or ABC Corp 1-20, or who received anything of value derived from money wrongfully taken from Plaintiff by Mullins, Mullins Sports, and/or ABC Corp 1-20, and who may be served after identification by service of Summonses and photocopies of the Complaint where they may be found.

6.

John Doe 1-10 are members and/or shareholders of Mullins Sports and/or ABC Corp 1-20 described below who will be identified during the discovery period of this matter.   John Doe 1-10 are individuals who received money wrongfully taken from Plaintiff by Mullins and/or Mullins Sports or who received things of value purchased with money wrongfully taken from Plaintiff by Mullins and/or Mullins Sports.

7.

ABC Corp 1-20 are corporate entities who are associated with Mullins and/or Mullins Sports, who participated in the tortious conduct as described herein or received money or things of value purchased with money wrongfully taken from Plaintiff by the tortious conduct of Mullins and/or Mullins Sports, and who may be

served after identification by service of Summonses and photocopies of the Complaint where they may be found.

8.

ABC Corp 1-20 are corporate entities owned or operated by Mullins which received money wrongfully taken from Plaintiff by Mullins and/or Mullins Sports or which received anything of value purchased with money wrongfully taken from Plaintiff by Mullins and/or Mullins Sports.

9.

ABC Corp 1-20 include the following corporate entities:

a. **JAM Investments, Inc.**, CEO, CFO, Sec. - Joseph Mullins

   Registered Agent: Joe Mullins, 300 Applecross Drive, Augusta, Columbia County, Georgia 30907;

   Principal Office: 300 Applecross Drive, Augusta, Columbia County, Georgia 30907

b. **Jessie Farrell, LLC**

   Registered Agent: Joe Mullins, 300 Applecross Drive, Augusta, Columbia County, Georgia 30907;

Principal Office: 300 Applecross Drive, Augusta, Columbia County, Georgia 30907

c. **Jessie Grace, Jr., LLC**

Registered Agent: Joe Mullins, 300 Applecross Drive, Augusta, Columbia County, Georgia 30907;

Principal Office: 300 Applecross Drive, Augusta, Columbia County, Georgia 30907

d. **Morgan Grace Jr., LLC (also shown as MORGAN GRACE JR, LLC)**

Registered Agent: Joe Mullins, 300 Applecross Drive, Augusta, Columbia County, Georgia 30907;

Principal Office: 300 Applecross Drive, Augusta, Columbia County, Georgia 30907

e. **Mullins Properties 1, LLC**

Registered Agent: Joe Mullins, 300 Applecross Drive, Augusta, Columbia County, Georgia 30907;

Principal Office: 300 Applecross Drive, Augusta, Columbia County, Georgia 30907

f. **Mullins Properties 2, LLC**

Registered Agent: Joe Mullins, 300 Applecross Drive, Augusta, Columbia County, Georgia 30907;

Principal Office: 300 Applecross Drive, Augusta, Columbia County, Georgia 30907

g. **Mullins Properties 3, LLC**

Registered Agent: Joe Mullins, 300 Applecross Drive, Augusta, Columbia County, Georgia 30907;

Principal Office: 300 Applecross Drive, Augusta, Columbia County, Georgia 30907

h. **Mullins Properties 10, LLC**

Registered Agent: Joe Mullins, 300 Applecross Drive, Augusta, Columbia County, Georgia 30907;

Principal Office: 300 Applecross Drive, Augusta, Columbia County, Georgia 30907

i. **Mullins Properties, LLC (also shown as MULLINS PROPERTIES, LLC)**

Registered Agent: Joe Mullins, 300 Applecross Drive, Augusta, Columbia County, Georgia 30907;

Principal Office: 300 Applecross Drive, Augusta, Columbia County, Georgia 30907

j.  **Pine Needle Ranch, LLC**

Registered Agent: Frank Mullins, 3675 J. Dewey Gray Circle, Suite 700, Augusta, Richmond County, Georgia 30909;

Principal Office: 305 Lancaster Street, S.W., Aiken, South Carolina 29801

k.  **Pine Needle Ranch-2, LLC** Listed on publicly available documents with respect to Mullins but this entity is not listed on the Georgia Sec. of State website.  Identity will be determined during the discovery period.

l.  **Grace T. Chastin, Jr., LLC** Listed on publicly available documents with respect to Mullins but this entity is not listed on the Georgia Sec. of State website.  Identity will be determined during the discovery period.

m. **Grace T. Chastain Jr., LLC** Listed on publicly available documents with respect to Mullins but this entity is not listed on the Georgia Sec. of State website.  Identity will be determined during the discovery period.

n.  **T. Chastin Grace, Jr., LLC**

Registered Agent: Joe Mullins, 300 Applecross Drive, Augusta, Columbia County, Georgia 30907;

Principal Office: 300 Applecross Drive, Augusta, Columbia County, Georgia 30907

o. **The Mullins Companies, LLC**

Registered Agent: Joe Mullins, 300 Applecross Drive, Augusta, Columbia County, Georgia 30907;

Principal Office: 300 Applecross Drive, Augusta, Columbia County, Georgia 30907

p. **Mullins Management, Inc.** Admin. Dissolved, last CEO and CFO: Joseph F. Mullins, last registered agent: Joseph F. Mullins, 220 Boy Scout Road, Augusta, Richmond County, Georgia 30909;

Principal office: 220 Boy Scout Road, Augusta, Richmond County, Georgia 30909.

## <u>JURISDICTION AND VENUE</u>

### 10.

Plaintiff is a citizen of the state of Arizona.

### 11.

Mullins is a citizen of the state of Florida.

### 12.

Mullins Sports is a citizen of the state of Florida.

8

13.

Upon information and belief, none of the John Does are citizens of the state of Arizona.  Upon information and belief, none of the ABC Corps which are organized as corporations are citizens of the state of Arizona.  Upon information and belief, none of the members of the ABC Corps which are organized as limited liability companies are citizens of the state of Arizona.

14.

There is complete diversity between Plaintiff and all Defendants.

15.

The amount in controversy as stated herein exceeds $75,000.00.

16.

This Court has subject matter jurisdiction with respect to this matter pursuant to 28 U.S.C. §1332 (diversity of citizenship).

17.

As shown below, Mullins, Mullins Sports, John Doe 1-10, and ABC Corp 1-20 regularly transact business within the state of Georgia and committed tortious acts and injuries in the state of Georgia.  Specifically, Mullins and Mullins Sports defrauded Plaintiff in Georgia, violated Georgia RICO laws within the state of Georgia causing damages to Plaintiff, and breached contracts to be performed in

the state of Georgia subjecting them to the jurisdiction and venue of this Court in Georgia pursuant to O.C.G.A. §9-10-90 *et seq*.  Additionally, John Doe 1-10 and ABC Corp 1-20 are jointly liable to Plaintiff with Mullins and Mullins Sports subjecting them to the jurisdiction and venue of this Court.

18.

Venue of this action is proper in the Augusta Division of the Southern District Court of Georgia pursuant to 28 U.S.C. §1391(b)(1) and (2) and O.C.G.A. §9-10-93.

### FACTS

19.

Plaintiff was a limited liability company organized in 2014 by the owner of a corporation known as SGH, Inc. ("SGH").  For almost forty (40) years, SGH operated a profitable business organizing and selling "golf tours" and "golf tournament packages" to the public.  Golf tournament packages included, among other things, tickets or badges permitting attendance at professional golf tournaments, housing, and other amenities.  In or about 2015, SGH started spinning off to Plaintiff its "golf tournament package operation" with respect to The Masters.

20.

During the time when SGH operated the Business, one of the golf tournament packages offered and sold involved the golf tournament known as The Masters in Augusta, Georgia (the "Masters"). After transfer of the Masters Tournament package business to Plaintiff, Plaintiff continued the business of offering to its customers golf vacation packages to The Masters.

21.

The crucial elements of the Masters golf vacation packages offered to Plaintiff's customers were the tickets and/or four-day badges ("Badges") permitting attendance to the tournament.

22.

Plaintiff obtained tickets, Badges, and other items from various persons and companies, including Mullins and Mullins Sports, and included those tickets, Badges, and other items in the Masters golf vacation packages that Plaintiff sold to its customers.

23.

SGH obtained tickets and Badges for the Masters from Mullins and Mullins Sports in 2013, 2014, 2015, 2016, and 2017. During the transfer of the business from SGH to Plaintiff and afterwards, Plaintiff obtained or contracted to obtain

tickets, Badges, and other things from Mullins and Mullins Sports for the Masters for the following years:  2015, 2016, 2017, 2018, and 2019.

24.

Except for the years 2018 and 2019, Mullins and Mullins Sports performed their obligations to provide tickets, Badges, and other items to Plaintiff as Mullins and Mullins Sports did to SGH, Inc. in prior years.

25.

At all times relevant, Plaintiff only interacted with Mullins with respect to the Badges, tickets, and other Masters items delivered to Plaintiff by Mullins and Mullins Sports.

### Facts related to the 2018 Masters

26.

On or about April 25, 2017, Mullins represented to Plaintiff that he had access to and could legally sell tickets to the practice rounds of the 2018 Masters as well as daily tickets and four-day Badges to the 2018 Masters tournament.

27.

Subsequently, Plaintiff negotiated with Mullins and entered into an agreement to purchase 183 practice round tickets (Monday, April 2, 2018; Tuesday, April 3, 2018; and Wednesday, April 4, 2018) and ninety-five (95) four-

12

day Badges for the 2018 Masters (Thursday, April 5, 2018; Friday, April 6, 2018; Saturday, April 7, 2018; and Sunday, April 8, 2018).   The four-day Badges obtained by Plaintiff from Mullins and Mullins Sports will be referred to hereinafter as the "2018 Mullins Badges.")  Mullins and/or Mullins Sports emailed to Plaintiff the invoice for the tickets and 2018 Mullins Badges.

28.

Plaintiff paid Mullins a total of $606,150.00 for the tickets and 2018 Mullins Badges for the 2018 Masters (practice round tickets: $157,900.00 and 2018 Mullins Badges: $448,250.00).

29.

Plaintiff received all the practice round tickets it purchased from Mullins and Mullins Sports for the 2018 Masters Tournament.

30.

Mullins and Mullins Sports failed to provide the 95, *valid*, four-day Badges for the 2018 Masters which Plaintiff purchased for $448,250.00.

31.

Prior to the start of the 2018 Masters Tournament, Mullins provided to Plaintiff the 95 2018 Mullins Badges for the tournament.   Pursuant to the

agreements between Plaintiff and its customers, Plaintiff distributed the 2018 Mullins Badges to its customers prior to the start of the 2018 Masters tournament.

32.

On Thursday, April 5, 2018, the first day of the 2018 Masters Tournament, four customers of Plaintiff attempted to use four of the 2018 Mullins Badges Plaintiff received from Mullins.  When these four clients presented the Badges, the customers were stopped at the gate by Masters' officials and security guards. These customers were told that their Badges had been "flagged" as invalid badges. After the customers were removed to a security area and interrogated by Masters' security, the four 2018 Mullins Badges were confiscated, the customers were refused entrance to Augusta National, and they were escorted off the premises by Masters' security.

33.

Over an approximate two-hour period on April 5, 2018, a total of twenty-three (23) customers of Plaintiff were stopped at the gate of Augusta National after presenting their Badges.  All were subjected to interrogation by Augusta National security, were refused entry into Augusta National, had their Badges confiscated, and were escorted off the premises by Masters' security.

14

34.

Having been confronted and interrogated by Augusta National security, having had their Badges confiscated, having been denied entry to the tournament, and having been escorted off the property by security guards, the customers of Plaintiff were rightly frustrated and angry with Plaintiff.

35.

Of the twenty-three customers of Plaintiff who were interrogated, excluded from the tournament, and escorted off the property, nineteen of them had 2018 Mullins Badges that Plaintiff had purchased, and which were delivered by Mullins. The four other customers who were interrogated, excluded from the tournament, and escorted off the property, had Badges which Plaintiff had purchased from someone other than Mullins or Mullins Sports (the "Non-Mullins Badges"). The Augusta National security confiscated the Non-Mullins Badges of these four customers because they were being used by people accompanying people with invalid 2018 Mullins Badges that Plaintiff received from Mullins.

36.

In addition to the four Non-Mullins Badges mentioned in the previous paragraph, eighteen more Non-Mullins Badges were confiscated from Plaintiff's customers by Augusta National security over the four days of the 2018 Masters

because those customers were attending the tournament with persons using invalid 2018 Mullins Badges that Mullins had delivered to Plaintiff.  These twenty-two customers with the Non-Mullins Badges were stopped, interrogated, had their Badges confiscated, were refused entrance the premises, and were escorted off the property.

37.

Each of Plaintiff's affected customers reported to Plaintiff that the moment the customer's Badge was scanned, security approached them and asked them to go into the security office.  Each of Plaintiff's affected customers was then interrogated by security guards with respect to where the customer had obtained the Badge before being escorted off the premises.

38.

Upon learning that on Thursday, April 5, 2018, twenty-three of Plaintiff's customers had been stopped, interrogated, refused access to the tournament, and escorted off the premises and that twenty-three four-day Badges to be used by Plaintiff's customers had been confiscated, Plaintiff confronted Mullins in person.

39.

In response to Plaintiff, Mullins on his own behalf and on behalf of Mullins Sports offered no explanation for the invalid 2018 Mullins Badges except to

16

represent that security was more intense that year and Plaintiff's customers must have gotten unlucky with random secondary inspections.

40.

At the time, Plaintiff had no way to determine if Mullins' statements with respect to the void/confiscated Badges were true or false.  Plaintiff later learned that these statements made by Mullins were false, that Mullins knew that they were false when made, and that Mullins intended to deceive Plaintiff by these false statements.  Plaintiff was misled by Mullins statements and did not further investigate the veracity of Mullins' statements at that time.  In justifiable reliance on the statements made by Mullins, Plaintiff delayed its efforts to obtain replacement Badges and delayed seeking legal remedies from Mullins and/or Mullins Sports.  By making the false statements, Mullins on his own behalf and on behalf of Mullis Sports, delayed the Plaintiff in seeking redress, including, without limitation, return of funds paid to Mullins and Mullins Sports as well as immediate legal consequence of Mullins' deception, among other things.

41.

Inasmuch as a Badge permits entry into the tournament for all four days, the confiscation by Augusta National of the twenty-three four-day Badges on Thursday April 5, 2018, affected Plaintiff's customers for the next three days of the

17

tournament as well.  Thus, twenty-three of Plaintiff's customers did not have the ability to attend any of the four-day tournament resulting in a total of 92 lost tournament days (23 confiscated four-day Badges for four days).

42.

To mitigate Plaintiff's damages, Plaintiff attempted to procure additional Badges or daily tickets for its customers so that Plaintiff's customers could attend the final three days of the 2018 Masters Tournament.  Plaintiff also wanted to make sure that its customers in the coming days would not be affected by the confiscation of the Badges, but this placed an enormous logistical and financial burden on Plaintiff.

43.

As part of its business, Plaintiff maintained a database of the Badge or ticket numbers it purchased from various suppliers.  Using this information and in an effort to identify the basis of Augusta National's confiscation of the twenty-three Badges, during the 2018 Masters Plaintiff asked Mullins to look at the numbers of the Badges which had been confiscated and let Plaintiff know if any other 2018 Mullins Badges were in any way associated with the confiscated Badges.  Mullins, on his own behalf and on behalf of Mullins sports, falsely represented to Plaintiff that the confiscated Badges were not associated with the unconfiscated Badges.

44.

In further efforts to mitigate the damages, Plaintiff believed that if any of the confiscated 2018 Mullins Badges somehow tainted the other 2018 Mullins Badges that had not been confiscated, Plaintiff could not permit its customers to use those Badges on other days and risk Plaintiff's customers being confronted by Augusta National security again, interrogated, refused entry, escorted off the premises by Security, and humiliated.

45.

Despite Plaintiff's efforts to identify and not use 2018 Mullins Badges which may have been somehow associated with the confiscated Badges and Mullins' personal, verbal assurances on or about Thursday, April 5, 2018, that the 2018 Mullins Badges were not tainted, on Friday, April 6, 2018, twenty more customers of Plaintiff were stopped by security of Augusta National, interrogated, excluded from the tournament, and escorted from the property.  Augusta National security also confiscated the twenty Badges.

46.

By Friday, April 6, 2018, forty-three (43) of Plaintiff's Badges were confiscated by Augusta National.  Of these, 31 were 2018 Mullins Badges and 12

had been obtained from other vendors but were used by people accompanying customers who used 2018 Mullins Badges.

47.

Some of the 2018 Mullins Badges were "sister Badges" meaning that the Badge is associated with one or more other Badges usually owned by the same person.  Some of the 2018 Mullins Badges were part of sister Badge groups. Augusta National security stopped some of Plaintiff's customers using "sister Badges" supplied by Mullins and Mullins Sports, interrogated those customers, barred them from the tournament, and escorted them off the property.  Augusta National canceled all the "sister Badges" in the series and confiscated the sister Badges Mullins had delivered to Plaintiff.

48.

In one incident on Saturday, a group of ten of Plaintiff's customers who were traveling together to the 2018 Masters were all refused entry when two of the customers presented 2018 Mullins Badges.  Mullins had delivered these two Badges on Thursday night (April 5, 2018), but they had been voided by Augusta National for reasons unknown to Plaintiff.  During the entire period of the 2018 Masters, Mullins did not disclose to Plaintiff that the two Badges were voided by Augusta National.

20

49.

Each four-day Badge can be seen as four tickets (one per day) permitting the holder to attend four days of the tournament.  Because of the confiscation of the 57 four-day Badges (23 on Thursday; 20 on Friday; 10 on Saturday; and 4 on Sunday), Plaintiff lost a total of 176 days of access to the 2018 Masters.

50.

After the confiscation of the 2018 Mullins Badges and the Non-Mullins Badges, Plaintiff sought to mitigate its damages by attempting to locate and obtain tickets and Badges from other vendors.  Plaintiff also refunded money paid to Plaintiff by some of its customers when Plaintiff could not acquire replacement tickets or Badges.  Specifically, Plaintiff paid $200,400.00 to obtain tickets and a few Badges to replace the confiscated Badges.  Plaintiff also refunded $103,032.00 to customers who could not attend the 2018 Masters because of the void Badges delivered by Mullins which were confiscated by the Augusta National security.

51.

Had Mullins and Mullins Sports provided valid four-day Badges, the golf vacation packages sold by Plaintiff to is customers would have been profitable, as it had been in the past.

52.

A total of 22 Non-Mullins Badges were confiscated by Augusta National security.  It is Plaintiff's understanding that the Non-Mullins Badges were confiscated by the Augusta National security because they were presented by people attending the tournament with people who had presented void 2018 Mullins Badges.

53.

Augusta National's cancellation of the 2018 Mullins Badges and Non-Mullins Badges caused severe damage to Plaintiff's reputation and forever precluded Plaintiff from obtaining Badges from some sources.  Specifically, for almost four decades Plaintiff and SGH had obtained badges and tickets for golf tournaments from a large supplier of tickets and badges.  Because of the fiasco caused by Mullins and Mullins Sports as aforesaid, this large supplier ended its relationship with Plaintiff and refused to do future business with Plaintiff.

54.

As a direct result of the failure of Mullins and Mullins Sports to provide valid Badges or to provide valid substitute tickets or Badges after Augusta National confiscated 57 four-day Badges (35 of which were 2018 Mullins Badges

and 22 were Non-Mullins Badges), Plaintiff lost three long-time corporate accounts and all future revenues associated with those accounts.

55.

During the 2018 Masters and thereafter, Mullins continued, in person, to represent to Plaintiff that the 2018 Mullins Badges were not void or tainted but that the Badges were confiscated by Augusta National security in random security checks. Moreover, during the period of the 2018 Masters through and including May 2018 when Plaintiff purchased tickets, Badges, and other items for the 2019 Masters, Mullins continued, in person, falsely to insist that Plaintiff's customers were just unlucky. At the time, Plaintiff had no way of knowing or proving Mullins' representations were false.

56.

At the time Mullins made the representations described in the preceding paragraphs, those representations were false; Mullins knew that those representations were false, Mullins made the representations with scienter and the intent to deceive Plaintiff and to induce Plaintiff to proceed with its business with Mullins and Mullins Sports and to induce Plaintiff from taking action (e.g., taking immediate legal action against Mullins and Mullins Sports); Plaintiff justifiably relied upon those false representations; and Plaintiff was thereby damaged.

23

Mullins and Mullins Sports benefited from these misrepresentations by keeping some of the funds paid by Plaintiff and by delaying Plaintiff's efforts to seek redress of its damages.

57.

Plaintiff purchased tickets, Badges, and other items from Mullins and Mullins Sports in or about May 2018.  Afterwards but prior to the start of the 2019 Masters Tournament, Plaintiff learned what may have occurred with respect to the confiscated Badges for the 2018 Masters tournament.  Plaintiff also learned that Mullins was well-aware of what had occurred with respect to the 2018 tickets and Badges before or during the 2018 Masters.  Throughout the 2018 Masters through and including the time Plaintiff purchased from Mullins and Mullins Sports the tickets, Badges, and other items related to the 2019 Masters in May 2018, Mullins failed to disclose to Plaintiff the truth with respect to the void and confiscated 2018 Mullins Badges and the confiscated 2018 Non-Mullins Badges.  During this period, through in-person conversations in Augusta as well as phone conversations, Mullins continued to maintain his false representations that Plaintiff's customers were just unlucky.  Not knowing the truth with respect to the 2018 Mullins Badges, Mullins' false representations as aforesaid induced Plaintiff to purchase tickets, Badges, and other items for the 2019 Masters from Mullins and Mullins Sports.

24

58.

After Plaintiff purchased the tickets, Badges, and other items related to the 2019 Masters from Mullins and Mullins Sports, Plaintiff learned that a former, disgruntled employee of Mullins, Mullins Sports, or one of the other corporate entities owned by Mullins, or someone associated with the former employee, may have sent Augusta National the numbers of some of the 2018 Mullins Badges. Upon information and belief, Augusta National decided to void and confiscate Badges.

59.

Neither Mullins nor Mullins Sports ever advised Plaintiff that someone may had sent the list of the 2018 Mullins Badges to Augusta National.

60.

Mullins and Mullins Sports knew what Augusta National was likely to do with the information disclosed to it.  Mullins and Mullins Sports had a duty to advise Plaintiff that some of the 2018 Mullins Badges had been or could have been voided or otherwise defective.  Neither Mullins nor Mullins Sports so advised Plaintiff.  Mullins' and Mullins' Sports' failure to disclose this material fact and their concealment of this material fact damaged Plaintiff.

61.

Prior to agreeing to purchase tickets and Badges for the 2019 Masters from Mullins and Mullins Sports, Plaintiff was unaware and could not be aware of the truth with respect to the 2018 Mullins Badges.

### Facts related to the 2019 Masters

62.

The Masters for 2019 was scheduled for April 11, 2019, through April 14, 2019, with practice rounds April 8, 2019, through April 10, 2019.

63.

Before Plaintiff learned about the true cause of the confiscation of the Badges in 2018 (both 2018 Mullins Badges and Non-Mullins Badges), in or about May 2018, Plaintiff purchased 145 practice round tickets (Monday to Wednesday) and 84 four-day Badges (Thursday through Sunday) for the 2019 Masters from Mullins and Mullins Sports, and other items (the "2019 Tickets and Badges"). Plaintiff paid $840,900.00 for the 2019 Tickets and Badges.

64.

Although Plaintiff had not learned the reason why Augusta National had confiscated the 2018 Badges from Plaintiff's customers, other vendors had learned of the confiscation, including vendors who offered hospitality buildings used by

Plaintiff for the 2018 Masters.  Some of these vendors refused to do business with Plaintiff for the 2019 Masters because of the problems caused by the void 2018 Mullins Badges.

65.

In March 2019, Plaintiff traveled to Augusta, Georgia to review the hospitality building Plaintiff had contracted for use at the 2019 Masters Tournament.  On that trip, Plaintiff intended to collect from Mullins the 2019 Tickets and Badges.  Mullins refused to meet Plaintiff during the March 2019 trip.

66.

In March 2019, Mullins explained to Plaintiff via phone that he had been called away to Florida.  Plaintiff later learned that at the time Mullins stated that he had been called away to Florida, neither Mullins nor Mullins Sports had the 2019 Tickets and Badges that Plaintiff had purchased.  Mullins' representation that "he had been called away to Florida" was false, Mullins knew that it was false when said, the statement was made with scienter and with the intent to deceive Plaintiff and to induce Plaintiff to refrain from acting (e.g., taking immediate legal action against Mullins and Mullins Sports, seeking to recover all funds paid for the 2019 Tickets and Badges, seeking replacement tickets and badges, etc.), and Plaintiff justifiably relied on the representations, thereby causing damages to Plaintiff.

27

Mullins and Mullins Sports benefited from the afore said misrepresentations by permitting Mullins and Mullins Sport to retain all the funds paid by Plaintiff for an extended period of time, to delay repayment of only a portion of those funds, and to delay Plaintiff in seeking legal redress against Mullins and Mullins Sports.

67.

On or about March 28, 2019, Mullins contacted Plaintiff via phone and advised Plaintiff that one of Mullins' sources of Badges, an employee at Augusta National, had his tickets confiscated.  In this phone conversation, Mullins assured Plaintiff, however, that although this source was no longer available, Mullins and Mullins Sports would provide Plaintiff with the 2019 Tickets and Badges paid for in full by Plaintiff.  This representation was false, Mullins knew that it was false when said, the statement was made with scienter and with the intent to deceive Plaintiff and to induce Plaintiff to refrain from acting (e.g., taking immediate legal action against Mullins and Mullins Sports, demanding that Mullins and Mullins Sports immediately return all funds paid for the 2019 Tickets and Badges, or seeking immediate legal redress from Mullins and Mullins Sports), and Plaintiff justifiably relied on the representation, thereby causing damages to Plaintiff. Mullins and Mullins Sports benefited from the misrepresentation by keeping all the funds paid by Plaintiff for an extended period of time and delaying the return of

some of the funds paid by Plaintiff, and delayed the Plaintiff seeking legal remedies.

68.

Mullins and Mullins Sports used the phone in furtherance of their intentional scheme to defraud Plaintiff.

69.

On or about April 2, 2019, when Plaintiff traveled to Augusta to the 2019 Master tournament, six days before the practice rounds were scheduled to begin, Mullins told Plaintiff in person that Augusta National had confiscated 75 strips of practice round tickets and 75 Badges from the employee mentioned in the preceding paragraph.  Again, however, Mullins assured Plaintiff that this would not prevent Mullins and Mullins Sports from providing Plaintiff with the 2019 Tickets and Badges and other items for the 2019 Masters that Plaintiff had purchased.  This representation was false, Mullins knew that it was false when said, the statement was made with scienter and with the intent to deceive Plaintiff and to induce Plaintiff to refrain from acting (e.g., taking immediate legal action against Mullins and Mullins Sports, demanding that Mullins and Mullins Sports immediately return all funds paid for the 2019 Tickets and Badges, or seeking immediate legal redress from Mullins and Mullins Sports), and Plaintiff justifiably

relied on the representation, thereby causing damages to Plaintiff. Mullins and Mullins Sports benefited from the misrepresentation by keeping all the funds paid by Plaintiff and delaying the return of some of the funds paid by Plaintiff, and delayed the Plaintiff seeking legal remedies.

70.

On or about April 3, 2019, five days before the practice rounds of the 2019 Masters were to begin, Mullins advised Plaintiff for the first time that Mullins and Mullins Sports would be unable to provide between 25 and 30 of the 2019 Badges Plaintiff had purchased and paid for in full.

71.

On April 4, 2019, four days before the practice rounds for the 2019 Masters were scheduled to begin, Mullins sent a text message to Plaintiff asking for a meeting in Augusta, Georgia. Plaintiff attended the meeting. At that meeting, Mullins told Plaintiff for the first time that Mullins and Mullins Sports were not going to provide any of the 2019 Tickets and Badges for which Plaintiff had prepaid in full. Mullins and Mullins Sports used the text feature on Mullins' phone in furtherance of their intentional scheme to defraud Plaintiff.

72.

At the April 4, 2019, meeting, Mullins assured Plaintiff that he would refund

all the money paid by Plaintiff for the 2019 Tickets and Badges and would assist Plaintiff in obtaining replacement tickets and Badges for the 2019 Masters.

73.

At the April 4, 2019, meeting, Mullins had no intention of refunding Plaintiff the entire purchase price for the 2019 Tickets and Badges, nor did Mullins intend to assist in replacing all the 2019 Tickets and Badges.    Mullins' representations were false, Mullins knew that they were false when said, the statements were made with scienter and with the intent to deceive Plaintiff and to induce Plaintiff to refrain from acting (e.g., taking immediate legal action against Mullins and Mullins Sports, demanding that Mullins and Mullins Sports immediately return all funds paid for the 2019 Tickets and Badges, or seeking immediate legal redress from Mullins and Mullins Sports), and Plaintiff justifiably relied on the representation, thereby causing damages to Plaintiff.   Mullins and Mullins Sports benefited from the misrepresentation by keeping all the funds paid by Plaintiff for an extended period of time and delaying the return of some of the funds paid by Plaintiff, and delayed the Plaintiff seeking legal remedies.

74.

Because of Mullins misrepresentations and repeated assurances that Plaintiff would receive the 2019 Tickets and Badges, Plaintiff delayed attempting to obtain

replacement tickets and Badges for the 2019 Masters.  Plaintiff justifiably relied upon these misrepresentations thereby causing damages to Plaintiff.

75.

Plaintiff attempted to locate and purchase replacement tickets and Badges for the 2019 Masters but Plaintiff encountered problems obtaining replacement tickets and Badges because: (a) Plaintiff was delayed by Mullins and Mullins Sports in recognizing the need to obtain replacement tickets and Badges, (b) other ticket and Badge sources did not have sufficient tickets and Badges; (c) if other sources had tickets or Badges, the tickets and Badges were offered at a much higher price than Plaintiff paid Mullins and Mullins Sports, and (d) Mullins and Mullins Sports refused at that time to refund any of the money paid by Plaintiff.

76.

In order to deceive Plaintiff and prevent Plaintiff from taking immediate actions, e.g, taking legal action against Mullins and Mullins Sports, Mullins represented to Plaintiff that he spent 12 hours on April 4, 2019, attempting to locate replacement tickets and Badges for Plaintiff's customers.  Mullins did not intend to locate replacement tickets and Badges and did not deliver replacement tickets and Badges to Plaintiff for all the tickets and Badges Plaintiff had purchased.  Mullins' representations were false, Mullins knew that they were false

when said because he had no intention of attempting to locate replacement tickets and Badges, the statements were made with scienter and with the intent to deceive Plaintiff and to induce Plaintiff to refrain from acting (e.g., taking immediate legal action against Mullins and Mullins Sports), and Plaintiff justifiably relied on the representations, thereby causing damages to Plaintiff.  Mullins and Mullins Sports benefited from the misrepresentation by keeping all the funds paid by Plaintiff for an extended period of time and delaying the return of some of the funds paid by Plaintiff, and delayed the Plaintiff seeking legal remedies.

77.

In an effort to protect its customers and save some of its business reputation, because Mullins and Mullins Sports refused to provide to Plaintiff the 2019 Tickets and Badges or to provide replacement tickets or Badges, Plaintiff contacted its customers and cancelled the Monday practice rounds for the customers who had purchased golf vacation packages with practice rounds tickets.

78.

Mullins and Mullins Sports failed to deliver tickets or Badges and refused to refund the entirety of Plaintiff's money, so Plaintiff's customers had no tickets or Badges for the 2019 Masters.  In order to prevent its customers from traveling to Augusta without the ability to attend the Masters, Plaintiff sent emails to its

customers to notify them that there were no tickets or Badges for the 2019 Masters. To the extent that it could, Plaintiff also used its own funds to send refunds to its customers.  Plaintiff also made follow-up phone calls to explain to its customers that Plaintiff had no tickets or Badges for the 2019 Masters for them.

79.

Plaintiff's notifications as aforesaid to its customers who had already purchased golf vacation packages and already made plans to travel to Augusta were not well received by the customers.  Many of them had already booked flights, some international flights, arranged other transportation to Augusta, and booked hotels and other accommodations, all of which had to be cancelled at the last minute.

80.

From its own resources, Plaintiff refunded approximately $700,000.00 to its customers for the cancelled golf packages for the 2019 Masters.

81.

Ultimately during the week of the 2019 Masters, Mullins delivered only 22 Monday practice round tickets, 17 Tuesday practice round tickets, zero Wednesday tickets, 31 one-day Thursday tickets, 21 one-day Friday tickets, 20 one-day Saturday tickets, and 20 one-day Sunday tickets.

**Post 2019 Masters Facts**

82.

Plaintiff itself and Plaintiff's predecessor, SGH, had been offering golf vacation packages to the Masters for almost forty years and were well regarded in the industry.  Yet, after the confiscation of Badges in 2018 and the failure by Mullins and Mullins Sports to deliver tickets and Badges in 2019, Plaintiff's reputation was destroyed by the aforesaid misrepresentations and last-minute refusal to deliver the tickets, Badges, and other things for the 2019 Masters. Furthermore, because Mullins and Mullins Sports refused to refund immediately all the money Plaintiff had paid for the 2019 Tickets and Badges, Plaintiff had to use all of its reserve funds to issue refunds for money some of its customers had paid for the 2019 Masters packages.  Of the $840,900.00 Plaintiff paid Mullins and Mullins Sports, Mullins and Mullins Sports only refunded $288,800.00 during the 2019 Masters which Plaintiff then paid to its customers.

83.

As a direct result of the destruction of Plaintiff's reputation as well as the financial instability caused by the wrongful actions of Mullins and Mullins Sports, Plaintiff ceased operating and closed.

84.

After the 2019 Masters debacle caused by Mullins' and Mullins Sports'
wrongful conduct, after the destruction of Plaintiff as a going concern, and in an
effort to prevent or delay Plaintiff from seeking legal remedies, Mullins promised
to refund all the money Plaintiff had paid for the 2019 Masters tickets and Badges.

85.

Mullins' representation that he would refund all Plaintiff's money for the
2019 Masters tickets and Badges was false when made, Mullins knew that it was
false when said because he had no intention of refunding all of Plaintiff's money;
the statement was made with scienter and with the intent to deceive Plaintiff and to
induce Plaintiff to refrain from acting (e.g., taking immediate legal action against
Mullins and Mullins Sports), and Plaintiff justifiably relied on the representation,
thereby causing damages to Plaintiff.  Mullins and Mullins Sports benefited from
the misrepresentation by keeping all the funds paid by Plaintiff for an extended
period of time and delaying the return of some of the funds paid by Plaintiff, and
delayed the Plaintiff seeking legal remedies.

86.

In further effort by Mullins and Mullins Sports to prevent or delay Plaintiff
from seeking legal remedies, on May 5, 2019, Plaintiff received an email from Jeff

Mullins, believed to be Mullins' cousin and accountant, advising Plaintiff that he was mailing five checks to Plaintiff allegedly covering the balance of what was owed to Plaintiff by Mullins and Mullins Sports.  Jeff Mullins told Plaintiff, however, that these checks could not be deposited into Plaintiff's account at that time because Mullins Sports did not have the funds to cover the checks.  Jeff Mullins further advised that sending these checks was a gesture of "good faith" and that Plaintiff could deposit the checks when advised that funds were available.  At all times relevant, Jeff Mullins was acting as the agent of and at the instructions of Mullins and Mullins Sports.  The email from Jeff Mullins to Plaintiff along with the other wrongful acts of Mullins and Mullins Sports, as alleged above, was part of the intentional scheme to defraud Plaintiff.  The email itself constitutes use by Mullins and Mullins Sports, through the acts of their agent, Jeff Mullins, of wires in furtherance of the scheme to defraud Plaintiff.

87.

Upon information and belief, Mullins and Mullins Sports had funds available to return all the funds paid by Plaintiff for the 2019 Masters tickets and Badges and the representation to the contrary was false.  The offer of the five checks was simply another ruse to permit Mullins and Mullins Sports to keep and

use Plaintiff's money for an extended period of time and to prevent or delay Plaintiff from proceeding with legal action.

88.

Plaintiff received the five checks, but contrary to the representation by Jeff Mullins, the checks did not equal the amount Plaintiff was owed and which Mullins had promised to refund to Plaintiff.

89.

Mullins and Mullins Sports ultimately refunded some of the money owed to Plaintiff including the following:

a.      7/16/2019 - Plaintiff deposited one of the checks provided by Jeff Mullins in the amount of $75.000.00 after notice that it would clear.

b.      7/17/2019 – Plaintiff deposited two other checks provided by Jeff Mullins totaling $107,300.00 after notice that they would clear.

c.      8/19/2020 – Plaintiff deposited a check in the amount of $28,150.00 per instructions from Joe Mullins, however, that check bounced.

d.      8/24/2020 – Plaintiff received a wire transfer from Joe Mullins in the amount of $84,500.00 to cover the bounced check as well as additional checks not yet deposited.

38

90.

As of the date of the filing of this lawsuit, Mullins and Mullins Sports are indebted to Plaintiff for tickets, Badges and other items not delivered for the 2018 Masters and additional costs and expenses in an amount to be proven at trial, but not less than $114,094.00, as well as other damages, including interest, lost profits, and the destruction of Plaintiff as a going business.

91.

Plaintiff would have had profits of approximately $506,461.00 from the 2018 Masters tournament, however, as a direct result of the wrongful conduct of Mullins and Mullins Sports, Plaintiff's profit dropped to only approximately $121,621.00. Therefore, as a direct result of the aforementioned misconduct by Mullins and Mullins Sports, Plaintiff suffered damages of at least $384,840.00.

92.

Plaintiff would have had profits of approximately $302,182.00 from the 2019 Masters tournament, however, as a direct result of the wrongful conduct of Mullins and Mullins Sports, Plaintiff had a loss of approximately $124,597.00. Therefore, as a direct result of the aforementioned misconduct by Mullins and Mullins Sports, Plaintiff suffered damages in 2019 of at least $430,281.00.

93.

The amount Plaintiff ultimately received from Mullins and Mullins Sports failed to recover Plaintiff's destroyed reputation and failed to restore Plaintiff to its position as a profitable business.  Mullins and Mullins Sports are liable to Plaintiff for lost future profits in amounts to be proven at trial but not less than $1,500,000.00.

94.

The misrepresentations made by Mullins, as aforesaid, were made in furtherance of the business of both Mullins and Mullins Sports.  Mullins Sports approved and ratified the misrepresentations made by Mullins as aforesaid.

95.

Mullins transferred to ABC Corp 1-20 funds wrongfully taken from Plaintiff and/or things of value purchased using said funds.

96.

Mullins transferred to John Doe 1-10 funds wrongfully taken from Plaintiff and/or things of value purchased using said funds.

97.

Through the acts of Mullins who owns or controls ABC Corp 1-20, ABC Corp 1-20 transferred to John Doe 1-10 funds wrongfully taken from Plaintiff and/or things of value purchased using said funds.

98.

Through the interrelated wrongful acts of Mullins and Mullins Sports, John Doe 1-10, and ABC Corp 1-20, as aforesaid, improperly derived proceeds, i.e., Plaintiff's money and or things of value obtained through the use of Plaintiff's money.

## COUNT I

**(Common Law Fraud)**
**(Mullins and Mullins Sports)**

99.

Plaintiff restates the allegations contained in paragraphs 1 through 98 herein as if fully restated in full in this paragraph.

100.

At all times relevant, Mullins acted as an agent of Mullins Sports.  Mullins and Mullins Sports conspired together to defraud Plaintiff and acted as the agents of one another with the full knowledge and approval of the other.  The actions of

Mullins are imputed to Mullins Sports rendering both Mullins and Mullins Sports liable to Plaintiff in like manner.

101.

The representations made by Mullins as more particularly described herein were false; Mullins and Mullins Sports knew that the representations were false at the time; if they involved future conduct, Mullins and Mullins Sports had no intent to so act; the representations were made with scienter and the intent to induce Plaintiff to act (pay money) or refrain from acting (e.g., taking immediate legal action against Mullins and Mullins Sports, demanding that Mullins and Mullins Sports immediately return all funds paid for the 2018 Mullins Badges and the 2019 Tickets and Badges, or seeking immediate legal redress from Mullins and Mullins Sports), and Plaintiff justifiably relied on the representations, thereby causing damages to Plaintiff.   Mullins and Mullins Sports benefited from the misrepresentations by keeping all the funds paid by Plaintiff for an extended period of time and delaying the return of some of the funds paid by Plaintiff, and delayed the Plaintiff seeking legal remedies.

102.

Mullins and Mullins Sports have been stubbornly litigious, have acted in bad faith, and have caused Plaintiff unnecessary trouble and expense so as to permit

Plaintiff to recover its expenses of litigation, including reasonable attorneys' fees, pursuant to O.C.G.A. §13-6-11.

103.

Mullins' conduct and the conduct of Mullins Sports evinces an intent to harm, or conduct that is reckless, showed willful misconduct, malice, wantonness, oppression, an entire want of care, and conscious indifference to the consequences of that conduct.

104.

Because Mullins' conduct and the conduct of Mullins Sports was willful and showed malice, wantonness, oppression, or an entire want of care which would raise the presumption of conscious indifference to consequences, Plaintiff is entitled to an award of punitive damages against Mullins and Mullins Sports to punish, penalize, or deter Mullins and Mullins Sports from such conduct pursuant to O.C.G.A. §51-12-5.1.  Further, Mullins' and Mullins Sports' wrongful acts were made with the specific intent to harm Plaintiff permitting a jury to award punitive damages in excess of the $250,000.00 cap pursuant to O.C.G.A. §51-12-5.1(f).

105.

With respect to this Count, Mullins and Mullins Sports are liable to Plaintiff for special damages in amounts shown at trial including but not limited to the extra

cost of replacement tickets and Badges for the 2018 and 2019 Masters in amounts to be shown at trial; general and compensatory damages including, but not limited to, $114,094.00 for undelivered tickets and Badges; Plaintiff's lost profits in amounts to be proven at trial but at least $815,121.00; consequential damages including the value of Plaintiff as a going concern in an amount to be shown at trial but at least $1,500,000.00; punitive damages in an amount set by the enlightened conscience of the jury but uncapped pursuant to O.C.G.A. §51-12-5.1(f); and attorneys' fees and costs pursuant to O.C.G.A. 13-6-11.

## COUNT II

**(Racketeering Influenced and Corrupt Organizations Act**
**(O.C.G.A. §16-14-1 *et seq.*)**
**(Mullins and Mullins Sports)**

106.

Plaintiff restates the allegations contained in paragraphs 1 through 105 herein as if fully restated in full in this paragraph.

107.

Mullins and Mullins Sports have engaged in a pattern of racketeering activity in violation of O.C.G.A. §16-14-4, as alleged herein.

108.

With respect to the 2018 Masters and the 2019 Masters, as aforesaid, Mullins and Mullins Sports engaged in at least two predicate acts of racketeering activity, namely wire fraud (18 U.S.C. §1343); mail fraud (18 U.S.C. §1341); and theft by deception (O.C.G.A. §16-8-3); each of which are defined as "racketeering activity" under O.C.G.A. §16-14-3(5)(A).

109.

As aforesaid, on behalf of himself and on behalf of Mullins Sports, Mullins made representations to Plaintiff in person, by telephone, via text communications, and by U.S. Mail creating and confirming Plaintiff's impression that Mullins and Mullins Sports had the ability to properly and legally obtain tickets and Badges for the 2018 and 2019 Masters tournaments and could then transfer those tickets and Badges to Plaintiff.  At the time Mullins made these representations, he knew that they were false and were made to induce Plaintiff to pay money to Mullins and/or Mullins Sports.

110.

Mullins acting on behalf of himself and on behalf of Mullins Sports acted through the above-mentioned deceitful means and artful practices with the intention of depriving Plaintiff of its property, i.e., its money.

111.

Mullins and Mullins Sports obtained Plaintiff's property, i.e., its money in violation of O.C.G.A. §16-8-3.

112.

O.C.G.A. §16-8-3(a) states that "[a] person commits the offense of theft by deception when he obtains property by any deceitful means or artful practice with the intention of depriving the owner of the property." Further, O.C.G.A. §16-8-3(b) states: "A person deceives if he intentionally:

(1) Creates or confirms another's impression of an existing fact or past event which is false and which the accused knows or believes to be false;

(2) Fails to correct a false impression of an existing fact or past event which he has previously created or confirmed;

(3) Prevents another from acquiring information pertinent to the disposition of the property involved;

(4) Sells or otherwise transfers or encumbers property intentionally failing to disclose an adverse claim, or other legal impediment to the enjoyment of the property, whether such impediment is or is not a matter of official record; or

(5) Promises performance of services which he does not intend to perform or knows will not be performed."

46

113.

Mullins on behalf of himself and on behalf of Mullins Sports: (1) created or confirmed Plaintiff's impression of an existing fact or past event which was false, (2) did so with the knowledge and belief that the impression was false, thereby creating the impression with intent to deceive, and (3) deceived and induced Plaintiff to part with its property or become deprived of such property, i.e., money.

114.

Mullins on behalf of himself and on behalf of Mullins Sports represented to Plaintiff that Mullins and Mullins Sports had the ability to deliver Masters' Badges for both the 2018 Masters and the 2019 Masters creating a false impression of an existing fact and is in violation of O.C.G.A. §16-8-3.

115.

Mullins on behalf of himself and on behalf of Mullins Sports intended to deprive Plaintiff of its property permanently.  Mullins and Mullins Sports knew or believed that the created impression was false, and thereby had the intent to act deceptively.

116.

Mullins knew that neither he nor Mullins Sports had the ability or intention to deliver all the Masters tickets and Badges promised to Plaintiff and when

Mullins made such a representation to Plaintiff, Mullins knew it created a false impression and was made with intent to deceive Plaintiff.

117.

A similar conspiracy had been used against at least one other person by Mullins and/or Mullins Sports.

118.

Mullins transferred Plaintiff's property, i.e., Plaintiff's money, or items purchased using Plaintiff's money wrongfully obtained as aforesaid to Mullins Sports, John Doe 1-10, and/or ABC Corp 1-20.

119.

Mullins, Mullins Sports, John Doe 1-10, and ABC Corp 1-20 obtained property, i.e., money or things of value, by deceitful means or artful practice with the intention of depriving Plaintiff thereof.  As a result of the false impressions created by Mullins on his own behalf and on behalf of Mullins Sports, Plaintiff was deceived into believing that Mullins and Mullins Sports could deliver all the Masters tickets and Badges as promised.

120.

In addition to Mullins' and Mullins Sports' violation of theft by deception under O.C.G.A. §16-8-3(b)(1), Mullins and Mullins Sports committed theft by

48

deception in violation of O.C.G.A. §16-8-3(b)(2) by failing to correct the false impression of an existing fact or past event which Mullins had previously created or confirmed, constituting an additional predicate act under O.C.G.A. §16-14-3(5)(A).  Mullins on his own behalf and on behalf of Mullins Sports created a false impression of an existing fact or past event that it knew or believed to be false, and thereafter Mullins and Mullins Sports failed to correct that false impression.

121.

Mullins on his own behalf and on behalf of Mullins Sports also committed an additional predicate act of theft by deception by violating O.C.G.A. §16-8-3(b)(5) by promising to perform services, e.g., obtaining tickets and Badges to replace all the Badges confiscated in 2018 and all tickets and Badges not delivered in 2019 constituting an additional predicate act under O.C.G.A. §16-14-3(5)(A).

122.

Mullins and Mullins Sports violated 18 U.S.C. §1343, wire fraud, on more than two occasions as aforesaid by using a scheme or artifice for obtaining Plaintiff's money by means of false or fraudulent representations transmitted by means of wire (via the telephone and text messages), constituting an additional predicate act under O.C.G.A. §16-14-3(5)(A).

123.

Mullins and Mullins Sports violated 18 U.S.C. §1341, mail fraud, on at least one occasion as aforesaid by using a scheme or artifice for obtaining Plaintiff's money by means of false or fraudulent representations transmitted by Mullins and Mullins Sports or their agent through the United States Postal Service, constituting an additional predicate act under O.C.G.A. §16-14-3(5)(A).

124.

The wrongful acts of Mullins and Mullins Sports as aforesaid constitute a pattern of racketeering activity in violation of O.C.G.A. §16-14-4.

125.

In addition to the unlawful acts by Mullins and Mullins Sports with respect to Plaintiff, upon information and belief, Mullins and Mullins Sports committed similar acts with respect to at least one other victim where Mullins and Mullins Sports received the victim's money by falsely representing that Mullins and Mullins Sports could secure and transfer Masters' Badges knowing that they could not.

126.

These racketeering activities of Mullins and Mullins Sports, as alleged, directly harmed Plaintiff, were related and have continuity, and were in furtherance of the scheme to defraud Plaintiff, depriving Plaintiff of its property, i.e., money.

127.

Mullins and Mullins Sports received benefits from each alleged racketeering activity conducted by Mullins and Mullins Sports.

128.

Mullins and Mullins Sports, acting individually and on behalf of each other, through a pattern of racketeering activity or proceeds derived therefrom, did, as further outlined herein, acquire or maintain, directly or indirectly, an interest in or control of Plaintiff's money, thereby causing harm to Plaintiff.

129.

Mullins and Mullins Sports, acting individually and on behalf of each other, did directly and proximately cause Plaintiff to suffer monetary damages.

130.

Mullins and Mullins Sports did conspire together and endeavor to violate, as further outlined herein, the provisions of O.C.G.A. §§16-14-4(a) and (b), thus

violating O.C.G.A. §16-14-4(c).  In addition to the aforementioned facts, Mullins Sports did recklessly tolerate and direct the actions of their agent, Mullins.

131.

The actions and conduct of Mullins and Mullins Sports as alleged herein were willful, fraudulent, exhibited bad faith, and evinced an entire want of care which would raise the presumption of a conscious indifference to the consequences to the members of the general public, and in particular to Plaintiff, who could reasonably be expected to be affected by said actions and conduct.  As such, pursuant to O.C.G.A. §16-14-6(c) and/or O.C.G.A. §51-12-5.1, Plaintiff is entitled to recover punitive and special damages from Mullins and Mullins Sports, jointly and severally, in an amount to be determined by the enlightened conscience of the jury, in order to punish Mullins and Mullins Sports for past misconduct and to deter Mullins and Mullins Sports from engaging in similar conduct in the future.

132.

Mullins and Mullins Sports are liable to Plaintiff for special damages in amounts shown at trial including but not limited to the extra cost of replacement tickets and Badges for the 2018 and 2019 Masters in amounts to be shown at trial; general and compensatory damages including but not limited to $114,094.00 for undelivered tickets and Badges; Plaintiff's lost profits in amounts to be proven at

trial but at least $815,121.00; and consequential damages including the value of Plaintiff as a going concern in an amount to be shown at trial but at least $1,500,000.00.

133.

Mullins and Mullins Sports are also liable to Plaintiff for three times Plaintiff's actual damages, punitive damages set by the enlightened conscience of the jury, and Plaintiff's attorneys' fees and costs reasonably incurred pursuant to O.C.G.A. §16-14-6(c) and/or O.C.G.A. §13-6-11.

## COUNT III

**(Racketeering Influenced and Corrupt Organizations Act**
**(O.C.G.A. §16-14-1 *et seq.*)**
**(John Doe 1-10 and ABC Corp 1-20)**

134.

Plaintiff restates the allegations contained in paragraphs 1 through 13 herein as if fully restated in full in this paragraph.

135.

As alleged in Count III, Mullins and Mullins Sports wrongfully obtained Plaintiff's property, i.e., its money, in violation of O.C.G.A. §16-14-1 *et seq.*

136.

Mullins and Mullins Sports transferred Plaintiff's money wrongfully obtained through a pattern of racketeering activity as aforesaid to John Doe 1-10 and ABC Corp 1-20. Additionally, Mullins and Mullins Sports transferred things of value purchased with Plaintiff's money wrongfully obtained through a pattern of racketeering activity as aforesaid to John Doe 1-10 and ABC Corp 1-20.

137.

Mullins owns or controls ABC Corp 1-20 and his actions were known, approved, and ratified by ABC Corp 1-20.

138.

Mullins, as owner and controller of ABC Corp 1-20, caused Plaintiff's property, its money, or items obtained by use of Plaintiff's money to be transferred to the benefit of the shareholders or members of ABC Corp 1-20.

139.

By receiving Plaintiff's money and in conspiracy with Mullins and Mullins Sports, John Doe 1-10 and ABC Corp 1-20 have engaged in a pattern of racketeering activity in violation of O.C.G.A. §16-14-4, as alleged herein, by acquiring an interest in or control of Plaintiff's property, i.e., money or items

purchased using Plaintiff's money wrongfully obtained by Mullins and Mullins Sports.

140.

Mullins' wrongful acts as alleged herein are imputed to John Doe 1-10 and ABC Corp 1-20 because Mullins had Plaintiff's property, i.e., Plaintiff's money or items acquired using Plaintiff's money wrongfully obtained, transferred to ABC Corp 1-20 then to John Doe 1-10.

141.

John Doe 1-10 and ABC Corp 1-20 obtained Plaintiff's property, i.e., its money in violation of O.C.G.A. §16-8-3 by Mullins.

142.

Mullins on behalf of himself and on behalf of John Doe 1-10 and ABC Corp 1-20 intended to permanently deprive Plaintiff of its property, i.e., its money.

143.

Through the actions of Mullins, John Doe 1-10 and ABC Corp 1-20 obtained property, i.e., money or things of value, by deceitful means or artful practice with the intention of permanently depriving Plaintiff thereof.

144.

The wrongful acts of John Doe 1-10 and ABC Corp 1-20 in receiving Plaintiff's property, i.e., its money as aforesaid constitute obtaining an interest in Plaintiff's property through a pattern of racketeering activity in violation of O.C.G.A. §16-14-4.

145.

These racketeering activities of John Doe 1-10 and ABC Corp 1-20, as alleged, directly harmed Plaintiff, were related and have continuity, and were in furtherance of the scheme to defraud Plaintiff, depriving Plaintiff of its property, i.e., its money.

146.

John Doe 1-10 and ABC Corp 1-20 each received benefits from each alleged racketeering activity conducted by Mullins and Mullins Sports.

147.

John Doe 1-10 and ABC Corp 1-20, acting individually and on behalf of each other, Mullins, and Mullins Sports, through a pattern of racketeering activity or proceeds derived therefrom, did, as further outlined herein, acquire or maintain, directly or indirectly, an interest in or control of Plaintiff's money, thereby causing harm to Plaintiff.

148.

John Doe 1-10 and ABC Corp 1-20, acting individually and on behalf of each other, Mullins, and Mullins Sports, did directly and proximately cause Plaintiff to suffer monetary damages.

149.

John Doe 1-10 and ABC Corp 1-20, acting individually and on behalf of each other, Mullins, and Mullins Sports, did conspire together and endeavor to violate, as further outlined herein, the provisions of O.C.G.A. §§16-14-4(a) and (b), thus violating O.C.G.A. §16-14-4(c).  In addition to the aforementioned facts, John Doe 1-10 and ABC Corp 1-20 did recklessly tolerate and direct the actions of their agent, Mullins.

150.

The actions and conduct of John Doe 1-10 and ABC Corp 1-20 as alleged herein were willful, fraudulent, exhibited bad faith, and evinced an entire want of care which would raise the presumption of a conscious indifference to the consequences to the members of the general public, and in particular to Plaintiff, which could reasonably be expected to be affected by said actions and conduct.  As such, pursuant to O.C.G.A. §16-14-6(c) and/or O.C.G.A. §51-12-5.1, Plaintiff is entitled to recover punitive and special damages from John Doe 1-10 and ABC

Corp 1-20, jointly and severally, in an amount to be determined by the enlightened conscience of the jury, in order to punish John Doe 1-10 and ABC Corp 1-20 for past misconduct and to deter them from engaging in similar conduct in the future.

151.

With respect to this Count, John Doe 1-10 and ABC Corp 1-20 are liable to Plaintiff for special damages in amounts to be shown at trial including but not limited to the extra cost of replacement tickets and Badges for the 2018 and 2019 Masters in amounts to be shown at trial; general and compensatory damages including but not limited to $114,094.00 for undelivered tickets and Badges; Plaintiff's lost profits in amounts to be proven at trial but at least $815,121.00; and consequential damages including the value of Plaintiff as a going concern in an amount to be shown at trial but at least $1,500,000.00.

152.

John Doe 1-10 and ABC Corp 1-20 are also liable to Plaintiff for three times Plaintiff's actual damages, punitive damages set by the enlightened conscience of the jury, and Plaintiff's attorneys' fees and costs reasonably incurred pursuant to O.C.G.A. §16-14-6(c) and/or O.C.G.A. §13-6-11.

## **COUNT IV**

**(Breach of Contract)**
**(Mullins and Mullins Sports)**

58

153.

In the alternative, Plaintiff asserts this Court for Breach of Contract as follows.

154.

Plaintiff restates the allegations contained in paragraphs 1 through 98 herein as if fully restated in full in this paragraph.

155.

Plaintiff fully performed its obligations under the agreements with Mullins and Mullins Sports, including the payment of all money owed by Plaintiff for the 2018 Mullins Badges and the 2019 Tickets and Badges.

156.

Mullins and Mullins Sports breached the agreements with respect to the 2018 Mullins Badges and the 2019 Tickets and Badges by not providing the tickets and Badges, and other items purchased and paid for by Plaintiff.

157.

Mullins' and Mullins Sports' breach of the agreements with respect to the 2018 Mullins Badges and the 2019 Tickets and Badges caused direct damages to Plaintiff for which Mullins and Mullins Sports are liable, including without

limitation, the value of the tickets and Badges not provided, in an amount to be proven at trial.

158.

As descried in detail below, Mullins' and Mullins Sports' breach also caused lost profits and consequential damages to Plaintiff for which Mullins and Mullins Sports are liable pursuant to O.C.G.A. §13-6-2; §13-6-8; §51-12-10; and other Georgia law.

159.

Mullins and Mullins Sports knew that Plaintiff intended to include the 2018 Mullins Badges and 2019 Tickets and Badges in golf vacation packages that Plaintiff sold to its customers.

160.

Mullins and Mullins Sports not only failed to deliver valid Badges in 2018 or any of the 2019 Tickets and Badges purchased and paid for by Plaintiff, but Mullins and Mullins Sports also refused to immediately refund the money to Plaintiff thereby forcing Plaintiff to use its reserve funds to purchase substitute tickets and Badges at a much higher price or to cancel Plaintiff's customers' packages.

60

161.

Neither Mullins nor Mullins Sports ever fully refunded to Plaintiff all the money Plaintiff paid to Mullins and Mullins Sports for the 2018 Mullins Badges or 2019 Tickets and Badges.

162.

As a result of Mullins' and Mullins Sports' breach of the agreements regarding the 2018 and 2019 Masters tickets and Badges, Plaintiff reimbursed its customers out of Plaintiff's own reserve funds.  Plaintiff lost revenues and its reputation as a direct result of Mullins' and Mullins Sports' failure to provide viable tickets and Badges.  These wrongful acts of Mullins and Mullins Sports destroyed Plaintiff as a viable business.

163.

Plaintiff suffered consequential damages solely caused by Mullins' and Mullins Sports' breach of the agreements to provide tickets and Badges for the 2018 and 2019 Masters and those damages are capable of exact computation.

164.

The consequential damages suffered by Plaintiff arising from Mullins' and Mullins Sports' breach of the agreements as aforesaid arose naturally and according to the usual course of events from such breach.  Mullins, Mullins Sports,

and Plaintiff contemplated such consequences when they entered into the agreements.

165.

Mullins and Mullins Sports breached the agreements with foreknowledge and for the purpose of depriving Plaintiff of its contemplated benefit.

166.

At all times and in all matters mentioned above and as aforesaid, Mullins and Mullins Sports have been stubbornly litigious and have caused Plaintiff unnecessary trouble and expense thereby entitling Plaintiff to an award of reasonable attorneys' fees and court costs pursuant to O.C.G.A. §13-6-11.

167.

Mullins and Mullins Sports are liable to Plaintiff for special damages in amounts shown at trial including but not limited to the extra cost of replacement tickets and Badges for the 2018 and 2019 Masters in amounts to be shown at trial; general and compensatory damages including but not limited to $114,094.00 for undelivered tickets and Badges; Plaintiff's lost profits in amounts to be proven at trial but at least $815,121.00; consequential damages including the value of Plaintiff as a going concern in an amount to be shown at trial but at least $1,500.00.00; and attorneys' fees pursuant to O.C.G.A. §13-6-11.

62

## COUNT IV
**(Alter Ego)**

168.

Plaintiff incorporates the allegations contained in paragraphs 1 through 166 by reference.

169.

Mullins is the owner and operator of Mullins Sports and ABC Corp 1-20.

170.

Upon information and belief and as will be documented in discovery, Mullins has ignored the separate existence of Mullins Sports and ABC Corp 1-20 by using them as an alter ego, agent, and instrumentality by keeping said corporations under Mullins' domination and control and by perpetuating their existence only to serve his personal purposes.

171.

Mullins repeatedly represented to Plaintiff that neither he nor Mullins Sports had sufficient funds to return the money transferred by Plaintiff to them for the void 2018 Mullins Badges or the 2019 Tickets and Badges.  Moreover, Jeff Mullins, believed to be the accountant for Mullins and Mullins Sports, as well as the other corporate entities owned and operated by Mullins, including ABC Corp 1-20, specifically instructed Plaintiff not to attempt to negotiate the checks sent to

Plaintiff because there were insufficient funds in the account(s) to cover those checks.

172.

In addition, upon information and belief, Mullins made no effort to obtain funds from his other corporate entities, including ABC Corp 1-20, sufficient to return to Plaintiff the funds paid for the void 2018 Mullins Badges or the 2019 Tickets and Badges.

173.

As aforesaid, when Plaintiff attempted to negotiate one of the checks transferred to Plaintiff by Jeff Mullins, that check "bounced" (returned NSF).

174.

Upon information and belief and as discovery will document, Mullins transacts business with respect to Masters Badges and tickets, as well as other things related to the Masters, mostly in the form of cash without running the funds or the transactions through the books of Mullins Sports.

175.

Upon information and belief and as discovery will document, Mullins commingles the funds generated from the transactions with respect to Masters Badges, tickets, and other Masters related items, including the funds received by

Mullins and Mullins Sports from Plaintiff, with the funds from the other corporate entities owned and/or operated by Mullins.

176.

Mullins' purpose in operating his Masters business using cash and transferring funds among his corporate entities, including Mullins Sports and ABC Corp 1-20, was to use subterfuge to mislead or defraud creditors, including Plaintiff, to hide assets, and to evade his corporations and the obligations of his corporate entities, including Mullins Sports and ABC Corp 1-20.

177.

In this action, Plaintiff seeks in excess of $2,400,000.00 special and compensatory damages trebled pursuant to Georgia RICO ($7,200,000.00), punitive damages, and attorneys' fees.

178.

As aforesaid and as discovery will show and as represented by Mullins, Mullins Sports has insufficient funds to satisfy Plaintiff's claims or to pay a money judgment in the amount claimed by Plaintiff and, thus, Mullins Sports is insolvent.

179.

Mullins represented that he did not have access to sufficient funds to satisfy Plaintiff's claims or to pay Plaintiff the funds transferred for the void 2018 Mullins

Badges or the 2019 Tickets and Badges.  Inasmuch as Mullins owns or controls ABC Corp 1-20, as will be shown through discovery, Mullins' statement includes the assertion that ABC Corp 1-20 also lack the funds to pay Plaintiff's claims.

180.

By transacting business related to the Masters in cash, by failing to keep sufficient funds in Mullins Sports, by commingling funds of Mullins Sports with other corporate entities including ABC Corp 1-20 as aforesaid, Mullins Sports and ABC Corp 1-20 were merely the instrumentality of Mullins' own affairs.

181.

The observance of the corporate form of Mullins Sports and/or ABC Corp 1-20 would sanction a fraud, promote injustice, permit Mullins Sports and ABC Corp 1-20 to evade their contractual and tort responsibility, and create an inequitable result.

182.

By reason of the foregoing, the Court should disregard the separate existence of Mullins Sports and ABC Corp 1-20 as corporations or companies and hold Mullins personally liable for all amounts due to Plaintiff from Mullins Sports and ABC Corp 1-20.

183.

The Court should disregard the corporate existence of Mullins Sports as well as ABC Corp 1-20 with respect to Plaintiff's claims *ex delicto* as well as *ex contractu* finding that Mullins as well as Mullins Sports and ABC Corp 1-20 which received Plaintiff's proceeds (money) improperly taken from Plaintiff or other things of value derived from Plaintiff's money improperly taken from Plaintiff are liable to Plaintiff for all damages sought by Plaintiff.

WHEREFORE, Plaintiff respectfully prays that this Court grant the following relief:

a.     That Summons and a copy of this Compliant for Damages be served on all Defendants as provided by law;

b.     That Plaintiff have a trial by jury as to all issues;

c.     That Plaintiff have and recover compensatory damages against all Defendants in amounts to be proven at the trial of this matter;

d.     That Plaintiff's damages be trebled as provided in O.C.G.A. §16-14-6;

e.     That Plaintiff have and recover punitive damages against the Defendants in an amount set by the enlightened conscience of the jury pursuant to O.C.G.A. §16-14-6(c) and/or O.C.G.A. §51-12-5.1;

f.      That Plaintiff have and recover the cost of this litigation including reasonable attorneys' fees pursuant to O.C.G.A. §16-14-6(c) and/or O.C.G.A. §13-6-11 in an amount to be proven at trial;

g.      That the Court disregard the corporate existence of Mullins Sports and ABC Corp 1-20 and find Mullins personally liable for all damages found due to Plaintiff; and

h.      That Plaintiff have and recover such other and further relief as the Court may deem just and proper.

Respectfully submitted, this 4th day of June 2021.

AUSTIN & SPARKS, P.C.

By:     */s/John T. Sparks, Sr.*_____
        John T. Sparks, Sr.
        Georgia State Bar No. 669575
        jsparks@austinsparks.com
        John B. Austin
        Georgia State Bar No. 028814
        jaustin@austinsparks.com

        Attorneys for Plaintiff

2974 Lookout Place, N.E.
Atlanta, Georgia 30305
404-869-0100 / 404-869-0200 (fax)

IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA
AUGUSTA DIVISION

| | |
|---|---|
| GOLF TRAVEL, LLC, | ) |
| | ) |
|     Plaintiff, | ) |
| | ) Civil Action File |
| v. | ) |
| | ) No. 1:21-cv-00063-JRH-BKE |
| JOSEPH MULLINS; MULLINS | ) |
| SPORTS AND ENTERTAINMENT, | ) **JURY TRIAL DEMANDED** |
| LLC; JOHN DOE 1-10; ABC CORP | ) |
| 1-20, | ) |
| | ) |
|     Defendants. | ) |

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that I have this day served a true and correct copy of the

**FIRST AMENDED COMPLAINT** to counsel of record listed below via

electronic mail through ECF, and that ECF will send an e-notice of the electronic

filing to the following:

Randolph Frails, Esq.
Tameka Haynes, Esq.
Frails & Wilson
211 Pleasant Home Road, Suite A1
Augusta, GA 30907
randyfrails@frailswilsonlaw.com
thaynes@frailswilsonlaw.com

Respectfully submitted this 4th day of June 2021.

AUSTIN & SPARKS, P.C.

By: */s/John T. Sparks, Sr.*
   John T. Sparks, Sr.
   Georgia Bar No. 669575
   Attorneys for Plaintiff

2974 Lookout Place, Suite 200
Atlanta, Georgia 30305-3272
(404) 869-0100 - Office
(404) 869-0200 - Facsimile
jsparks@austinsparks.com